FILED IN CHAMBERS
U.S.D.C ATLANTA
Date: Mar 25 2025
KEVIN P. WEIMER, Clerk
By: Emilia McManus
Deputy Clerk

# United States District Court

NORTHERN DISTRICT OF GEORGIA

UNITED STATES OF AMERICA

v.

Carlos Sambrano

**UNDER SEAL**

**CRIMINAL COMPLAINT**

Case Number: 1:25-MJ-283

I, the undersigned complainant being duly sworn, state the following is true and correct to the best of my knowledge and belief. At least on or about September 18, 2024 and continuing through at least January 14, 2025, in Jackson County, in the Northern District of Georgia, and elsewhere, the defendant did, possess a firearm as a convicted felon, and conspire to purchase firearms in or affecting interstate commerce on behalf, or at the request of, of any other person, knowing or having reasonable cause to believe that such other person intends to use, carry, possess, or sell the firearms in furtherance of a felony,

in violation of Title 18, United States Code, Sections 922(g)(1) and 932.

I further state that I am a Special Agent and that this complaint is based on the following facts:

PLEASE SEE ATTACHED AFFIDAVIT

Continued on the attached sheet and made a part hereof.   Yes

*Zachary Howard*
Signature of Complainant
Zachary Howard

Based upon this complaint, this Court finds that there is probable cause to believe that an offense has been committed and that the defendant has committed it. Sworn to me by telephone pursuant to Federal Rule of Criminal Procedure 4.1.

March 25, 2025                                   at   Atlanta, Georgia
Date                                                         City and State

REGINA D. CANNON                              *R. Cannon*
UNITED STATES MAGISTRATE JUDGE
Name and Title of Judicial Officer                Signature of Judicial Officer

AUSA Bethany L. Rupert /
Bethany.Rupert@usdoj.gov

## AFFIDAVIT IN SUPPORT OF COMPLAINT AND WARRANT

1. I, Zachary S. Howard, Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"), depose and say under penalty of perjury that the following is true and correct to the best of my knowledge and belief:

## PURPOSE

2. I make this affidavit in support of an Application for a Criminal Complaint and Arrest Warrant for Carlos SAMBRANO ("SAMBRANO") because probable cause exists to believe that SAMBRANO violated 18 U.S.C. §§ 932 (straw purchasing conspiracy) and 922(g)(1) (possession of a firearm by a convicted felon) in the Northern District of Georgia.

## AGENT BACKGROUND

3. . I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a search warrant. I am presently employed as a Special Agent with the United States Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), where I have worked since January 14th, 2024. I am presently assigned to Atlanta Group I of the ATF's Atlanta Field Division. In that capacity, my duties include investigating federal criminal offenses in the Northern District of Georgia.

4. During my tenure as a Special Agent, I completed approximately 480 hours (12 weeks) of instruction at the Federal Law Enforcement Training Center in Glynco, Georgia (FLETC) as part of the Criminal Investigator Training Program (CITP). CITP provides fundamental training in the techniques, concepts, and methodologies of conducting criminal investigations. Some of the subjects covered

in include training in firearms, physical techniques, driving techniques, handcuffing, interviewing, surveillance, crime scene management, photography, basic firearms training, and federal court procedures. Upon graduation from CITP, I attended and completed approximately 600 hours (15 weeks) of instruction at the ATF's Special Agent Basic Training Program (SABT). SABT provides fundamental training in the techniques, concepts, and methodologies of conducting criminal investigations specific to ATF. Some of the subjects covered in SABT include training in investigations related to firearms, arson, explosives, narcotics, gangs and criminal groups, use of confidential informants and undercover officers in investigations, physical techniques, interviewing, electronic, physical, and mobile surveillance, crime scene management, basic firearms training, and federal court procedures. During my training, I completed blocks of instruction and labs that have enabled me to identify potential sources of electronic evidence, including but not limited to computers, cell phones, and other digital storage media and to preserve and exploit such evidence. Additionally, I have consulted with law enforcement officers and other professionals who specialize in identifying, collecting, and preserving electronic evidence.

5. Prior to my tenure as a Special Agent, from 2019-2024, I was an Assistant United States Attorney (AUSA) and Special Assistant United States Attorney (SAUSA) in the U.S. Attorney's Office for the Northern District of Georgia. During my time as an AUSA and SAUSA I was a federal criminal prosecutor focusing primarily on large scale narcotics and firearms crimes. From 2016-2019, I was the Deputy Director of Legal Services and Legal Services Officer for the Georgia Department of Public Safety (GDPS). During my tenure with GDPS, I provided

legal and policy services and training to members of the Georgia State Patrol, Georgia Motor Carrier Compliance Division, and Georgia Capitol Police. From 2013-2016, I was an Associate Attorney employed by Oliver Maner LLP in Savannah, Georgia. During my time with Oliver Maner, I represented law enforcement officers and entities and other municipal and county employees and entities in state and federal court litigation relating to, among other things, claims of false arrest, false imprisonment, excessive use of force, violations of 42 U.S.C. § 1983, and violations of state and federal constitutional rights. From 2012-2013, I was a Police Officer and then Senior Police Officer with the Gwinnett County Police Department (GCPD). During my tenure with GCPD I was a patrol officer assigned to the Central Precinct. Among other things, I responded to calls for service, investigated criminal violations of law, made arrests, and issued traffic citations. I am a cum laude graduate of the University of Georgia School of Law and a graduate with highest honors from the Georgia Institute of Technology's College of Management.

SOURCES OF INFORMATION

6. I make this affidavit based upon personal knowledge derived from my participation in this investigation, including information I have learned from discussions with Special Agents and other law enforcement officers, witness interviews, corporate records, and other related documents.

7. I have endeavored to make clear which facts stated in this affidavit are based upon my own personal observations and which are not. Unless otherwise noted, factual statements not based upon my personal observations are based upon information received from one or more law enforcement officers who may have

either direct or hearsay knowledge of the factual statement, such knowledge having been conveyed to me either personally or through a report that I have reviewed. Wherever in this affidavit I state my belief, such belief is based upon my training and experience and upon the information obtained through this investigation.

8. The facts relayed in this affidavit do not reflect the totality of information known to me or other agents and officers, but instead are merely the facts necessary to establish probable cause. I do not rely upon facts not set forth herein in reaching my conclusion that a warrant should be issued, nor do I request that this Court rely upon any facts not set forth herein in reviewing this affidavit in support of the application for a warrant.

## PROBABLE CAUSE

9. ATF, HSI, and DEA agents are investigating the ongoing straw purchasing of belt-fed firearms including .50 caliber rifles, M240B rifles, M249S rifles, and M2 belt-fed .50 caliber rifles in Georgia. The investigation has shown that these firearms are being purchased for cash at various Federal Firearms Licensees ("FFLs") located in the state of Georgia. The firearms are then consolidated and trafficked to Mexico. Agents have identified purchases from straw purchasers[1] beginning in June of 2023.

10. Furthermore, DEA has seized approximately one metric ton of methamphetamine coordinated by Servando CORONA-PENALOZA, who is one

---

[1] For the purposes of this affidavit, a "straw purchase" is the purchase of a firearm by a person on behalf of or at the request of another individual (the "actual purchaser") for the purposes of (1) circumventing legal restrictions that may otherwise prevent or hinder the actual purchaser from directly purchasing the firearm; and/or (2) hiding the actual purchaser's identity.

of the main targets of this investigation. During a custodial interview on February 14, 2025, CORONA-PENALOZA admitted to ATF and DEA agents that he was responsible for the import of narcotics to the U.S. and the export of firearms to Mexico.

11. On October 7, 2024, ATF agents received notification from a source of information (SOI) at Dixie Ammo Dump—an FFL in Hoschton, Georgia (in the Northern District of Georgia)—that Victor MENDOZA-ORTIZ, who is a suspected straw purchaser working for CORONA-PENALOZA, was in the store purchasing a Barrett .50 caliber rifle. The SOI advised MENDOZA-ORTIZ had previously purchased another .50 caliber rifle. Agents later received the ATF Form 4473s completed by MENDOZA-ORTIZ and found he had purchased two Barrett, M82A1, .50 caliber rifles—one on September 18, 2024, and one on October 7, 2024. Per the receipts, MENDOZA-ORTIZ paid approximately $19,100 in cash for the two firearms. To date, MENDOZA-ORTIZ has paid approximately $40,234.90 in cash for all his firearm purchases.

12. On October 17, 2024, ATF agents retrieved surveillance footage from Dixie Ammo Dump, which documented the firearms purchases by MENDOZA-ORTIZ on September 18, 2024, and October 7, 2024. The surveillance shows that, on both dates, MENDOZA- ORTIZ was accompanied by **SAMBRANO**.

13. On January 13, 2025, ATF Atlanta Group 1 agents were notified by an SOI from Carroll's Gun & Pawn Shop—an FFL in Roberta, Georgia (in the Middle District of Georgia)—of an attempted purchase of a .50 caliber rifle by two Hispanic males. The males were advised by the pawn shop to return the following day, January 14, 2025, to complete the purchase.

14. On January 14, 2025, Luis CHAVARRIA traveled to Carroll's Gun & Pawn Shop and purchased a Barrett, model M107A1, .50 caliber rifle for approximately $13,598 in cash. CHAVARRIA was accompanied by **SAMBRANO** while in the store. After completing the purchase, CHAVARRIA drove away from the store. Shortly thereafter, Georgia State Patrol conducted a traffic stop on CHAVARRIA and **SAMBRANO's** car at mile marker 5 on State Road 42 in Roberta, Georgia.

15. During the traffic stop, ATF agents interviewed CHAVARRIA and **SAMBRANO**. CHAVARRIA and **SAMBRANO** provided inconsistent responses regarding the purchase of the Barrett rifle. For instance, CHAVARRIA stated that he and **SAMBRANO** split the cost of the rifle, whereas **SAMBRANO** stated that he did not contribute any money toward the purchase and that all the money came from CHAVARRIA. **SAMBRANO** also stated that he was a convicted felon but then corrected himself and stated that he believed his charge was reduced to a misdemeanor when he was convicted. ATF agents conducted a check of **SAMBRANO's** criminal record and determined that he had a felony drug trafficking conviction from Alabama in 2018.

16. During the traffic stop, the Barrett rifle was located in the rear cargo area of the SUV in which CHAVARRIA and **SAMBRANO** were travelling. **SAMBRANO** was in actual possession of .50 caliber ammunition that he and CHAVARRIA purchased at the FFL. That is, the ammunition was on the center console between the driver's and passenger's seats and **SAMBRANO** picked up the ammunition and manipulated it.

17. **SAMBRANO** stated during the traffic stop that he resided at 2849 Maple Grove Drive in Rex, Georgia. Agents later determined that "2849" is not a valid

address on Maple Grove Drive. However, 2848 Maple Grove Drive was the closest valid address. Agents later conducted surveillance at this address (the **SAMBRANO** residence) and observed a black 2014 Chrysler 300 and a black Dodge Durango both registered to Glorimar ORTIZ at the **SAMBRANO** residence. Agents know ORTIZ to be SAMBRANO's wife because SAMBRANO stated during the January 14, 2025, traffic stop that his phone was registered in his wife's name, who he identified as ORTIZ.

18. Three cell phones were seized during the traffic stop. The first ("Device 1") was found on **SAMBRANO's** person, and he claimed possession of it. An extraction of Device 1 revealed calls to known co-conspirators, images of firearms, and videos involving firearms. One such video showed **SAMBRANO** wearing a distinct gold necklace with a gold medallion while inside of a residence brandishing what appears to be two firearms: a rifle and a handgun.

19. A second phone ("Device 2") was seized from CHAVARRIA's person, and he claimed possession of it.

20. The third phone ("Device 3") was seized from the front passenger side door pocket of the vehicle next to where **SAMBRANO** was seated. Neither **SAMBRANO** nor CHAVARRIA claimed possession of Device 3 but given its location, Agents believed it belonged to **SAMBRANO**. Agents searched this device and found extensive evidence indicating that the device was used by **SAMBRANO** (e.g. "selfie" style photographs of **SAMBRANO**)**.** Device 3 contained voice and text message conversations pertaining to buying and selling firearms as well as narcotics.

    a. One video located on Device 3 was recorded inside a residence that

  contained money counters, large amounts of cash, and what appears to be narcotics packaged in kilogram quantities. In this specific video, a male voice says in Spanish, "I'm working Armani, I'm working." Agents know Armani to be a nickname for CORONA-PENALOZA.

 b. Other pictures and videos located on Device 3 show what appear to be kilogram amounts of narcotics including but not limited to cocaine and methamphetamine with symbols stamped on the suspected narcotics. This use of stamped symbols is a common method for drug traffickers to identify specific products and the source of those products for the purposes of tracking, distribution, and sales.

 c. Another video on Device 3 shows automatic rifles being shot outdoors by a male who resembles CHAVARRIA.

 d. Finally, a video on Device 3 recorded on the same day as the traffic stop, January 14, 2025, shows the inside of Carroll's Gun & Pawn Shop, the purchased Barret .50 caliber rifle, and CHAVARRIA standing at the counter looking at the Barret .50 caliber rifle.

21. Location information from the seized phones also indicated that **SAMBRANO** was present at the **SAMBRANO** residence on January 13, 2025, and January 14, 2025, immediately prior to travelling to Carroll's Gun & Pawn Shop.

## CONCLUSION

22. Based on the foregoing I respectfully request that the Court issue a

Criminal Complaint and Arrest Warrant for **SAMBRANO** for violating 18 U.S.C. §§ 932 (straw purchasing conspiracy) and 922(g)(1) (possession of a firearm by a convicted felon) beginning on a date and unknown but at least as early as September 18, 2024, and continuing through at least January 14, 2025.

END OF AFFIDAVIT